1   Edward S. Zusman (SBN 154366)
    Kevin K. Eng (SBN 209036)
2   MARKUN ZUSMAN & COMPTON, LLP
    465 California Street, Suite 500
3   San Francisco, CA 94104
    Telephone: (415) 438-4515
4   Facsimile: (415) 434-4505

5   Ilan Chorowsky (Admitted Pro Hac Vice)
    Chorowsky Law Offices
6   1130 N. Dearborn Street
    Suite 3110
7   Chicago, IL 60610
    Telephone: (312) 643-5893
8   Facsimile: (312) 643-5894

9   Frank Jablonski (Admitted Pro Hac Vice)
    Progressive Law Group LLC
10  354 W. Main Street
    Madison, WI 53703
11  Telephone: (608) 258-8511
    Facsimile: (608) 442-9494

12
    Noah Shube (Admitted Pro Hac Vice)
13  The Law Offices of Noah Shube
    434 Broadway, Sixth Floor
14  New York, NY 10013
    Telephone: (212) 274-8638

15
    Attorneys for Plaintiff
16

17                  UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19                        SAN JOSE DIVISION

20  THE MISSING LINK, INC., d/b/a BATH          Case No. C 07 4487 RMW
    PLUS INC., individually and on behalf of all
21  others similarly situated,                  **FIRST AMENDED COMPLAINT**

22                        Plaintiff,            **CLASS ACTION**

    v.
23
    EBAY INC.,                                  **DEMAND FOR JURY TRIAL**
24
                          Defendant.
25

26  ///

27  ///

28  ///

                                  1

1    Plaintiff, The Missing Link, Inc., on behalf of itself and all others similarly situated,

2   except as to those allegations pertaining to Plaintiff or Plaintiff's attorneys, which are based upon

3   personal knowledge, alleges as follows upon information and belief, against the Defendant, Ebay

4   Inc. ("Ebay"):

5    1.    Plaintiff brings this action pursuant to the California Unfair Competition Law

6   ("UCL") (CAL. BUS. & PROF. CODE § 17200, *et seq.*), and the common law, to recover damages

7   and/or to seek restitution on behalf of Plaintiff and the members of the Classes defined below.

8    **PARTIES, JURISDICTION AND VENUE**

9    2.    Jurisdiction is proper before this Court pursuant to the Class Action Fairness Act,

10   28 U.S.C. § 1332 (d)(2), and other provisions of law.  The total amount in controversy in this case

11   exceeds $5,000,000 in the aggregate, there exists at least minimum diversity of citizenship, and

12   the number of putative class members in the aggregate exceeds 100.

13    3.    Ebay transacts business and offers services for sale in this District.  The unfair,

14   fraudulent and wrongful acts described herein have had a direct effect on consumers within this

15   District, and a substantial part of the events giving rise to Plaintiff's claims herein alleged

16   occurred within this District.

17    4.    Defendant Ebay Inc., a California corporation with its principal place of business

18   in the State of California, provides services to United States residents via its internet portal,

19   Ebay.com, which brings buyers and sellers together online.  Ebay Inc. enables sellers in the

20   United States to list products for sale on Ebay.com with fixed advertising rates and fees, and via

21   online auctions.

22    5.    As described hereinafter, Ebay made virtually the same relevant promises and

23   entered into virtually the same online agreement with Plaintiff and the Classes defined below.

24    6.    Plaintiff The Missing Link, Inc. d/b/a Bath Plus Inc., is an Illinois corporation with

25   its principal place of business in the State of Illinois.  It sells bathroom fixtures online and by

26   other means, and has had one or more seller's accounts on Ebay.com.  As a registered Ebay seller,

27   Plaintiff purchased listings in various formats using Ebay's online "Sell Your Item" form.

28   Throughout 2005 and 2006, Plaintiff paid Ebay fees to post, or "list," items for sale on Ebay.com,

2

for a specified duration (e.g., 24 hours). However, shoppers could not search for items Plaintiff listed on Ebay.com "immediately" or at the promised start time as Ebay represented – sometimes not for several hours. Nor could shoppers view the listings for the full duration of the listing period that Plaintiff had paid for, and for which Ebay had promised. During the same time period, Ebay induced Plaintiff to open and maintain an "Ebay Store," whereby it created and purchased, upon store opening and thereafter, "Good 'Til Canceled" listings, including listings for items that were never sold, for which Ebay unlawfully and unfairly increased the fees and rates as set forth in detail below.

## JURISDICTION AND VENUE

7.      Assignment to the San Jose Division of this District is proper pursuant to Civil Local Rule 3-2 because a substantial part of the events or omissions which give rise to this action occurred, and are occurring, in Santa Clara County.

## CLASS ACTION ALLEGATIONS

8.      Plaintiff brings this action individually and on behalf of all persons and entities who, before July 19, 2006, paid for listings on Ebay.com using the "Good 'Til Canceled Format," one or more items which were not sold before August 22, 2006 – the Good Until Cancelled ("GUC") Class. Excluded from the GUC Class are governmental entities, Defendant, and its subsidiaries, employees, officers, and directors. Also excluded is any judge, justice, or judicial officer presiding over this matter and Plaintiff's counsel.

9.      Plaintiff also brings this action individually and on behalf of all persons and entities who paid to advertise one or more items for sale on Ebay.com, in any selling format (including, without limitation, "Fixed Price" listings, "Buy It Now" listings, and "Auction-Style" listings), which were not advertised for sale on Ebay.com for the entire duration and/or time period of the listing purchased – the "Listing Class." Excluded from the Listing Class are governmental entities, Defendant, and each of its subsidiaries, employees, officers, and directors. Also excluded is any judge, justice, or judicial officer presiding over this matter, and Plaintiff's counsel.

///

3

10.    Due to the nature of the trade and commerce involved, Plaintiff reasonably believes that each of the Classes numbers at least in the hundreds, and that the members of each Class are so numerous and geographically dispersed across the United States, that joinder of the members of either Class is impracticable.

11.    Ebay's unlawful conduct described herein with respect to Plaintiff is generally applicable to the members of each Class.  A well-defined community of interest regarding questions of law and fact pertains to this action, and affects all Class members.  Questions of law or fact common to each Class predominate over any questions affecting only individual members, including, without limitation, as follows:

**Good Until Cancelled (GUC) Class:**

a.    Prior to July 19, 2006, did Ebay promise Plaintiff and the GUC Class that they could create "Good 'Til Cancelled" listings that automatically renew until cancelled by the seller?

b.    Prior to July 19, 2006, did Ebay promise Plaintiff and the GUC Class that they could maintain "Good 'Til Cancelled" listings, at rates and fees Ebay promised at the time they created such listings, and until cancelled by the seller?

c.    Did Ebay breach its contract with Plaintiff and the GUC Class by raising, effective August 22, 2006, rates and/or fees on Good 'Til Cancelled store listings created prior to July 19, 2006?

**Listing Class:**

a.    Did Ebay represent to Plaintiff and the Listing Class that they could list items for sale on Ebay.com for a set time period and/or duration?

b.    Did Ebay make these listings available to shoppers for less than the promised time period and/or duration?

c.    Did Ebay have a practice of publishing listings on Ebay.com only at periodic intervals?

///

///

4

d.    Did Ebay breach its contracts with Plaintiff and the Listing Class by publishing listings which it did not make available to online shoppers for the duration and/or time period Ebay promised?

e.    Did Ebay's conduct as to the Listing Class violate the UCL (CAL. BUS. & PROF. CODE § 17200, et seq.)?

f.    Were Plaintiff and the Listing Class damaged by Ebay's wrongful conduct alleged herein?

g.    Was Ebay unjustly enriched by virtue of the its practice of posting listings for less than the promised duration?

12.    Plaintiff's claims are typical of the claims of the other members of the Listing Class and of the GUC Class in that each member of each Class, including Plaintiff, were harmed in substantially the same way by Ebay's class-wide conduct as set forth herein.

13.    Plaintiff adequately represents each Class.  Plaintiff has no interests antagonistic to those of each Class, is committed to prosecuting this action, and has retained counsel experienced in class action litigation.

14.    A class action is superior to other available methods for purposes of fairly and efficiently adjudicating this controversy.  The prosecution of separate actions by individual members of each Class would create the risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Ebay, contravene principles of judicial economy, and effectively foreclose legal representation for the many Class members whose damages are not large enough to justify the expense of an attorney, especially in litigating against an enormous corporation such as Ebay.

15.    The proposed Classes as alleged comport with the criteria for class certification consistent with Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

///
///
///
///

5

## SUBSTANTIVE ALLEGATIONS

16.     Ebay.com is the largest virtual retail store and auction site on the internet.  Ebay transacts business with buyers and sellers almost exclusively online through its website and via email.  Ebay invites "sellers" to list items for sale on Ebay.com, and invites potential buyers to visit the website and search, browse, bid and/or buy items that sellers list.

17.     On Ebay.com, Ebay publishes the terms of its contract with sellers for advertising or "listing" an item for sale on the website, which include, as set forth below, material terms as to listing times and duration, and listing fees that apply uniformly to Plaintiff and the members of each Class.

18.     To post items for sale on Ebay.com, the seller must register as a seller with Ebay, and complete an online request for a "listing" including designation of the quantity for sale of each item listed.

19.     As part of registering as a seller, the seller is required to provide Ebay with financial account information, which Ebay uses to automatically debit fees in connection with each listing, including, *inter alia,* an "insertion fee" for posting the listing, fees upon sale of an item listed, and fees for optional services.

20.     Ebay charges – and automatically debits – insertion fees (and fees for optional listing features) from a seller's account at the time the seller orders a listing, and represents that these fees are not refundable.  On its website Ebay.com, Defendant likens the insertion fee to a fee for placing a newspaper advertisement, which is charged regardless of whether the item advertised is sold.

21.     Ebay's conduct as set forth below, including without limitation the construction of its form contracts, communications with Plaintiff and the members of the Classes, its listing delays, and the conception and creation of its rate increases, occurred in or emanated from the State of California.

///

///

///

6

**Ebay's Delayed Listing Practice**

22.    Plaintiff and the Listing Class members, when purchasing an item listing, completed online listing request forms, i.e., the "Sell Your Item" form, which required them to select the listing duration and format.

23.    Ebay uniformly invites each seller, when submitting a listing request, to choose the duration of the listing.  Except with respect to Good 'Til Cancelled listings, Ebay has typically offered listings only for relatively short periods of time, e.g., 1, 3, 5, 7 or 10 days.

24.    When inviting sellers to select the listing duration, Ebay, on its website, represented (and continues to represent) to sellers that upon listing an item on Ebay.com, e.g., by completing its "Sell Your Item" form online, the listing begins immediately, unless the seller chooses a "scheduled listing" option whereby he or she designates an alternative start time (to the nearest minute).

25.    Ebay sends the seller email messages, both immediately after the seller completes the "Sell Your Item" form and also when the duration ends, indicating, to the nearest minute, that the listing has started and ended.

26.    Ebay further represents that listings end in exact increments following a listing's exact start time, i.e., to the nearest minute.  Thus, if a seller submits an "auction" listing at 1:14 p.m. on Sunday, and selects a listing duration of one day, Ebay represents, on its website and at the time the seller purchases the listing, that the listing begins immediately upon purchase and will end at exactly 1:14 p.m. on Monday.  (This term does not apply, however, if the seller had selected an option whereby the listing ends immediately upon purchase and the listed item is sold.)

27.    When ordering a listing, sellers reasonably expect, as the Defendant represents, that the listing or advertisement will last for the duration requested.  Indeed, Ebay provides sellers with a ticking count-down of the time remaining on a listing almost the moment after ordering a listing.

28.    In reality, listings purchased by Plaintiff and Listing Class members did not last for the duration purchased.  Nor were such listings viewable on Ebay.com (by anyone other than

7

1    the purchaser of the listing) until some time after the listings were ordered and purchased or

2    scheduled to be begin.

3         29.    Plaintiff and the Listing Class purchased numerous listings, including 1, 3, 5, 7,

4    and/or 10 day item listings of items that were unsold when the listing period ended, which Ebay

5    advertised on Ebay.com for less than the entire listing duration it promised.

6         30.    Ebay knows that it may take up to several hours to post listings for shoppers on its

7    website, after a listing is scheduled to begin or after the seller completes the "Sell Your Item"

8    form.  During the lag time, the listed item is unavailable, so that during that time, shoppers would

9    not be able to find, or even view the listing, by keyword, content search and/or by browsing

10   categories on Ebay.com.  However, Ebay knows that every hour of a listing counts; while listings

11   may be purchased for only a short period of time, i.e., from 24 hours up to only 10 days, listings

12   on average take longer to sell, i.e., two weeks.

13        31.    Ebay intentionally and falsely represents to sellers, at the time of listing

14   purchase and by confirmatory email message immediately thereafter, that listings of various types

15   begin immediately and that listings are in effect for the entire duration selected.

16        32.    Ebay also fails to extend the listing period for unsold items past the originally

17   stated expiration time, for a duration commensurate with the delay in posting, to compensate

18   sellers for the delay in posting.

19        33.    On October 22, 2006, Plaintiff purchased a 24-hour listing.  Defendant represented

20   to Plaintiff on both its "Sell Your Item" form and in confirmatory emails that the 24-hour period

21   would begin immediately upon order.  Plaintiff received confirmation of this listing from

22   Defendant immediately upon ordering the listing, as follows: "Sell Curved Shower Rod- List

23   Time 9:04pm CST, 10/22/06."  In fact, the listing was not searchable on Ebay.com, until

24   approximately four hours or more after it was ordered.  Immediately upon Plaintiff's order of the

25   listing, Ebay provided Plaintiff with an internet link showing what this listing looked like.  Ebay

26   did not inform Plaintiff, however, that the link only displayed what the listing would look like

27   when it was actually posted at some point in the future.  The link included a display of the

28   category where Ebay would ultimately place the listing, "Home & Garden > Plumbing & Fixtures

8

> Bathroom > Other Bathroom."  However, Plaintiff was the only one who could access the listing "immediately."  Any shopper who was searching that category immediately after Plaintiff placed the order would not have been able to locate the item.  The listing would not be publicly available until Ebay populated the listing to its website, a process that would take approximately four to five hours.  Ebay did not extend the duration of the listing, whether commensurate with the delay in posting or to any extent whatsoever.  Plaintiff and other members of the Listing Class routinely experienced similar uncompensated delays when posting items for other listing periods.

### Ebay's Imposition of Rate Hikes for "Good Until Cancelled" Store Listings

34.    Ebay, to increase its sales and induce long-term, high volume listings from sellers, introduced its "store" concept, in or around 2001, whereby Ebay invites sellers to maintain virtual "stores" where they can group, list, and sell their items.  Ebay marketed the "store" option to sellers as providing the opportunity to cheaply list items for sale for longer durations.

35.    As of July 2006, store inventory listings comprised 83% of active Ebay listings on average.

36.    Ebay.com makes plain to sellers that opening, setting up, and maintaining a Ebay.com "store" is a chore and an expense requiring them (a) to pay monthly fees starting at around $16 and going much higher, and (b) to learn how to use online tools to design an online Ebay "store" which, in effect, may require Ebay sellers to hire help expressly for that purpose.

37.    Ebay induced Plaintiff and other sellers to open and maintain virtual stores by promising, on its website or by email messages to sellers, that they could list quantities of "store" items at a low, automatically renewable insertion rate of 2 cents per item per month, until sold or until cancelled by the seller – which Ebay calls the "Good 'Til Cancelled" option.  Ebay promises, promotes, and suggests, in its online terms and conditions, that it will not end the seller's listings – only the seller will be able to cancel the listing.  Ebay promises that it will maintain the same listing and online location for the listing, and that the seller would be automatically charged the listing fees/rate every 30 days.  When ordering a "store" listing, for example, Ebay.com presents the seller with a menu from which to select a 30, 60, or 90 day

///

listing, or an indefinite "Good 'Til Cancelled" listing (debited from the seller's account at a monthly rate of 2 cents).

38.     However, Ebay, defying the very name it gave to its "Good 'Til Cancelled" listings, on or about July19, 2006, abruptly announced that it was unilaterally modifying these terms: effective August 22, 2006, Ebay would increase the monthly insertion rate on all "Good 'Til Cancelled" store listings from 2 cents per listing to between 5 and 10 cents per listing, and would impose sizable increases in the fees, which store sellers paid upon sale of an item, and which are a percentage of the final price of the item when sold, i.e., the "final value fee."

39.     Ebay chose to apply the fee and rate hike to "Good 'Til Cancelled" store listings purchased *before* Ebay announced the new fee and rate increases on July 19, 2006, including prior-pending "Good 'Til Cancelled Listings" purchased by Plaintiff and other sellers when they initially were induced by Ebay to "open" their stores by buying low-cost "Good 'Til Cancelled" listings featuring at the attractive 2 cents per listing and low final value fee.

40.     Prior to Ebay's fee/rate hike announcement of July 19, 2006, Plaintiff and the GUC Class had already contracted to place Good 'Til Canceled listings at the more attractive 2 cent monthly insertion rate and lower final value fee, pursuant to Ebay's form terms which further provided that Ebay.com would automatically debit the 2 cent insertion fee every 30 days until the item is sold or the listing is cancelled only by the seller (and that Ebay would debit its pre-August 22, 2006 lower final value fee upon sale of an item).

41.     Though Ebay, prior to July 19, 2006, had promised that sellers could purchase Good 'Til Cancelled listings until sold at pre-August 22, 2006 rates, it increased the rates in mid-stream without adequate notice, or consent consideration by Plaintiff and the GUC Class, whose Good 'Til Cancelled listings were already in effect at the time of Ebay's fee/rate hike announcement in around July 19, 2006.

42.     Ebay could have easily instituted its Good 'Til Cancelled rate changes only for Good 'Til Cancelled listings created after July 19, 2006.  But it unscrupulously opted to increase rates for pre-existing Good 'Til Cancelled listings to boost profits, knowing that many Plaintiff or ///

10

GUC Class members are already significantly invested in opening and maintaining virtual Ebay stores.

43.     At various times between 2001 and July 18, 2006, Plaintiff and other members of the GUC Class purchased a variety of Good 'Til Cancelled listings.  They have been damaged by paying higher fees and rates for the same ongoing, automatically renewed listings, including inventory and items which were part of or added to the listings before and after July 19, 2006.  Plaintiff and the GUC Class suffered these damages from August 22, 2006 forward.  Plaintiff and other GUC Class members also were damaged by having to cancel some of these Good 'Til Cancelled listings created pre-July 19, 2006, in light of Ebay's imposition of fee and rate hikes for these listings.

44.     Ebay has reaped enormous sums of money it debited from Plaintiff's and the other Class members' financial accounts resulting from Ebay's unlawful delayed listing practice and Good 'Til Cancelled listing fee/rate hike.

## FIRST CAUSE OF ACTION

### Breach of Contract

### (Listing Class)

45.     Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action individually and on behalf of the Listing Class.

46.     Ebay offered its listing services to Plaintiff and the Listing Class.  Ebay promised them that, in exchange for insertion fees and other fees, it would advertise for them on Ebay.com for an exact period of time (e.g., 1, 3, 5, 7, or 10 days), beginning and ending at an exact scheduled time to the nearest hour and minute, e.g., beginning upon placing a listing request, and ending on the exact hour and minute for the period chosen.  If the seller does not choose a specific listing start time, as a default, Ebay's online "Sell Your Item" process notifies the seller that the listing has been "listed" at a time corresponding with the exact minute that the seller clicks the virtual "Save and Continue" button on the "Sell Your Item" form.  Ebay sends email

///

11

1   messages, stating purported start and end times for listing purchases, to sellers upon purchase of a

2   listing.

3       47.     Plaintiff and the Listing Class accepted the Ebay offer to post a listing.  They each

4   purchased listings by completing Ebay's "Sell Your Item" form, which purportedly enabled them

5   to choose an exact period of time in which to "list" or advertise items for sale on Ebay.com.  Ebay

6   debited fees from Plaintiff's and the Listing Class members' financial accounts pursuant to each

7   purchase.

8       48.     However, Ebay published Plaintiff's and the Listing Class members' listings for

9   less than the agreed-upon duration, and only after the promised start time.  For example, the

10  listings did not begin at the specified time, or immediately as Ebay promised, but instead, began

11  only after considerable delay – typically hours after the start time Ebay promised.  Browsers and

12  buyers could not view, or search for the listings until well after the purchased listing start time.

13      49.     Nor did Ebay extend the listing ending time either by a duration commensurate

14  with Ebay's delay in starting the listing, or in any other respect to compensate for the delay.  In

15  other words, the listings purchased by Plaintiff and the Listing Class were commonly not "listed"

16  for buyers for the full duration of the contract.

17      50.     Plaintiff and other Listing Class members purchased listings between one day and

18  ten days in duration, that did not sell (or sell the entire quantity listed) during the listing period

19  but which shoppers could not view, search or browse for the entire duration of the listing or at the

20  start time Ebay represented.

21      51.     Ebay easily could have terms and a policy whereby the listing duration begins

22  the moment that the listing is actually advertised and searchable on Ebay.com, but Ebay chooses

23  not to do so.

24      52.     Plaintiff and the Listing Class performed the obligations required of them per the

25  terms and conditions of Ebay's contract to sell items on Ebay.com.

26      53.     To the extent that Ebay's boilerplate contract could be interpreted to mean either

27  that listings merely have to be assigned a listing number which is searchable online only by the

28  *seller* for the duration purchased, or that listings have to be advertised and searchable by *shoppers*

12

1     on Ebay.com (e.g., by category, content, or type of product), for the duration promised, Ebay

2     breached its implied duty of good faith and fair dealing by failing to enforce the latter

3     interpretation of the contract.

4           54.     Plaintiff and the Listing Class were damaged as a result of Ebay's aforementioned

5     breaches of contract, and Ebay is unjustly enriched thereby.

6           55.     Ebay should account for all fees it improperly collected and withheld, and should

7     have a constructive trust imposed on those amounts attributable to the period of time in which

8     paid-for listings were not "listed" for shoppers for the duration purchased.

9           WHEREFORE, Plaintiff prays for the following relief:

10                  a.     An order certifying the Listing Class defined above, and appointing

11                       Plaintiff as representative of the Listing Class and Plaintiff's counsel as

12                       class counsel;

13                  b.     A finding and declaration that Ebay, by its above-described delayed listing

14                       practice, has breached its contract with Plaintiff and the Listing Class;

15                  c.     An award of damages and interest thereon to Plaintiff and the putative

16                       Listing Class members;

17                  d.     Institution of a constructive trust and disgorgement of wrongfully held fees.

18                  e.     Reasonable attorney's fees and costs; and

19                  f.     Such further and other relief the Court deems appropriate.

20

21                       **SECOND CAUSE OF ACTION**

22         **Violations of California Business and Professions Code §17200 *et seq.***

23                       **(Listing Class)**

24           56.     Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and

25     brings this cause of action individually and on behalf of the Listing Class.

26           57.     Ebay knew but failed to disclose, adequately or at all, to Plaintiff and the Listing

27     Class at the time they ordered their listings, on Ebay's website, e.g., on its "Sell Your Item" form,

28     ///

13

(a)     that the listings routinely would be advertised or searchable by shoppers for less than the duration which Ebay represented and the seller selected; and

(b)     that, in the event of a delay in making the listing available to shoppers, Ebay would not post delayed listings beyond the initial expected listing end time to compensate for the delay.

58.     Ebay, on its "Sell Your Item Form," and in its confirmatory emails to Plaintiff and the Listing Class documenting purported listing start and end times, further misrepresented to Plaintiff and the Listing Class that listings would be posted for the entire duration (and beginning at the specified start time) which Ebay represented.

59.     Ebay intended that Plaintiff and the Listing Class rely on the foregoing omissions and misrepresentations.  As described in detail above, however, Plaintiff and the Listing Class purchased listings which were not posted (for anyone except the seller who purchased the listing) for the duration that Ebay represented and which the seller selected.

60.     Ebay perpetuated its deceptive portrayal of the listing duration by enabling sellers to view an online ticking time clock, purporting to show the time remaining on their listings.  However, the listing time clock would begin to tick despite the fact that, as described above, the listing was not yet viewable on Ebay.com by anyone except the seller.

61.     Plaintiff and the Listing Class purchased listings for set durations after viewing Ebay's online representations, on its "Sell Your Item" form and elsewhere.  Indeed, to purchase a listing, the seller is required to choose the listing duration.  Had Plaintiff and the Listing Class known that listings would not be advertised for the duration or at the start time Ebay promised, they would not have purchased the listings at the rates Ebay charged or at all.

62.     As a result of above-described acts, omissions, concealments, and misrepresentations, Plaintiff and the other Listing Class members were damaged.

63.     Ebay, by committing the acts alleged above, has been and continues to be engaged in fraudulent and/or unfair business practices in violation of the UCL.

///

///

14

64.     Plaintiff requests restitution of those amounts unlawfully obtained from Plaintiff and the Classes by Ebay as a result of the misrepresentations and omissions set forth above, in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for the following relief:

a.     An order certifying the Listing Class defined above, and appointing Plaintiff as representative of the Listing Class and Plaintiff's counsel as class counsel;

b.     A finding and declaration that Ebay, by its above-described misrepresentations and omissions with respect to its listing delays, has violated the UCL, CAL. BUS. & PROF. CODE § 17200 *et seq.*);

c.     An award of restitution, including interest thereon, to Plaintiff and the Listing Class;

d.     Reasonable attorney's fees and costs; and

e.     Such further and other relief the Court deems appropriate.

## THIRD CAUSE OF ACTION[1]

### Unjust Enrichment

### (Listing Class)

65.     Plaintiff realleges each of the preceding paragraphs as if fully set forth herein.

66.     Plaintiff brings this cause of action, which is rooted in Ebay's fraudulent conduct and unjust enrichment and not in quasi-contract, individually and on behalf of the Listing Class.

67.     As stated with particularity above, Ebay represented to Plaintiff and the Listing Class members that it would publish listings for set time periods but failed to publish listings accordingly.

68.     Ebay illicitly collected portions of listing fees due to its delayed listing practice and is unjustly enriched thereby.

///

---

[1]  Plaintiff re-pleads the same Third Cause of Action that the Court dismissed without prejudice, solely for purposes of preserving such claims for purposes of any appeal.

15

69.     The monies, or portions thereof, which Plaintiff and the Listing Class members paid for listings with shorter durations and later start times than those that Ebay represented, conferred substantial benefits upon the Defendant, which it knowingly accepted and unjustly retained.  In fairness and under principles of equity, such benefits should be refunded and paid over to Plaintiff and the Listing Class members in an amount to be proven at trial.

70.     Ebay should account for all fees it improperly collected and withheld arising from its delayed listing practice, and a constructive trust should be imposed on these monies.

WHEREFORE, Plaintiff prays for the following relief:

    a.    An order certifying the Listing Class defined above, and appointing Plaintiff as representative of the Listing Class and Plaintiff's counsel as class counsel;

    b.    A finding and declaration that Ebay, by its above-described misrepresentations and omissions with respect to its listing delays, has been unjustly enriched by virtue of its gains from the sale of the above-described delayed listings;

    c.    An award of restitution, including interest thereon, to Plaintiff and the Listing Class members;

    d.    Reasonable attorney's fees and costs; and

    e.    Such further and other relief the Court deems appropriate.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Good Until Cancelled Class)

71.     Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action individually and on behalf of the GUC Class.

72.     Until July 19, 2006, Ebay offered to create and post "Good 'Til Cancelled" "store" listings, for a duration until cancelled by the seller, at promised fees/rates including an "Insertion Rate" of 2 cents every 30 days and preset Final Value Fees.

16

73.     Specifically, at relevant times Ebay's "Stores Fees" schedule expressly provided as follows: that sellers could choose to buy a Good 'Til Cancelled listing; that the duration of said listing was "Good 'Til Cancelled"; that the Good 'Til Canceled "Insertion Fee" is "$.02 / 30 days"; that Good 'Til Cancelled "Final Value Fees" are 8% of an item's selling price up to $25, plus 5% of items sold at $25.01 to $1,000, plus 3% of any sale amount exceeding $1,000; that "Good 'Til Canceled listings will be charged the relevant fees every thirty days"; that this Store format enables a seller "to list your items at a set price"; and that this Store format enables the seller to list items for "a longer duration and lower insertion fees".  Group Exhibit A—excerpts of Ebay Store Fees published on Ebay.com.

74.     Ebay states that a Good 'Til Cancelled listing is a "fixed price listing duration that allows you to list an item and have that listing automatically renew every 30 days as long as there is quantity available."  Ebay further explains, "This listing will recur each 30-day period until you choose to end this listing and will maintain the same listing number for the entire life of the listing. eBay will not end this listing for you."  Group Exhibit A—excerpts of Ebay FAQs published on Ebay.com.

75.     In other words, Ebay promised that its "Good 'Til Cancelled" listings could be ordered at the above-stated "set price" that was to be "automatically renewed" for the life of the listing, as long as there is quantity available or until the seller chooses to end the listing.

76.     Plaintiff and the GUC Class accepted Ebay's offer to order "Good 'Til Cancelled" "store" listings with these terms, by ordering "Good 'Til Cancelled" store listings, and/or establishing and maintaining Ebay.com "stores" in connection with Good 'Til Cancelled listing purchases, prior to July 19, 2006.

77.     Plaintiff and the GUC Class ordered a Good 'Til Cancelled listing only once; thereafter Ebay automatically debited fees for the listing from their bank or financial accounts on a monthly basis, until they cancelled the listing or until quantity of the product sold was reduced to zero.

///

///

17

78.    Ebay breached its contract with Plaintiff and the GUC Class because, after July 19, 2006, it increased its fees for Good 'Til Cancelled listings that Plaintiff and the GUC Class already ordered and accepted before July 19, 2006.

79.    In a message posted on Ebay.com on or about July 19, 2006, Ebay's North America President, Bill Cobb, announced that store inventory fees would be increased, effective August 22, 2006, which Ebay has applied to Good 'Til Cancelled listings (including those placed *before* the notice of the fee increase). The monthly insertion fee, which Ebay debits from the seller at the time the seller reviews and accepts the fee and orders the Good 'Til Cancelled listing, and which Ebay debits every thirty days thereafter, increased by up to 500 percent (i.e., from 2 cents, to either 5 cents for listings advertised for less than $25, or 10 cents for listings advertised for $25 or more). Final value fees on Good 'Til Cancelled listings were also increased.

80.    Ebay applied these fee increases to Good 'Til Cancelled listings, which Plaintiff and the GUC Class created, ordered and accepted at the above-described "good until cancelled" "set prices" *before* Ebay's price increase announcement of July 19, 2006.

81.    Ebay's fee hike for Good 'Til Cancelled listings purchased before July 19, 2006, is unreasonable, unethical, unscrupulous and unconscionable.

82.    Ebay did not obtain consent from or provide consideration to Plaintiff and the GUC Class prior to implementing or notifying them of fee increases for pre-existing Good 'Til Cancelled listings; and Ebay did not preserve pre-August 22, 2006 fees and rates for Good 'Til Cancelled listings consistent with the terms of such listings purchased prior to July 19, 2006.

83.    As a result of Ebay's aforesaid breaches of contract, Plaintiff and the GUC Class were damaged. Plaintiff and the GUC Class continued to pay for pre-July 19, 2006 Good 'Til Cancelled listings and Ebay stores after the fee hike, and/or cancelled such listings or closed their Ebay stores in the wake of the fee hike.

84.    Ebay was unjustly enriched by its aforementioned conduct. Ebay should account for all fees it improperly collected and withheld, and should have a constructive trust imposed, with respect to such monies it debited from sellers' financial accounts after August 22, 2006, for orders of Good 'Til Cancelled listings placed before July 19, 2006.

18

85.     Ebay's User Agreement promised that sellers "will have an opportunity to review and accept the fees that [sellers] will be charged based on our Fees schedule, which we may change from time to time."  This generalized statement does not vitiate Ebay's above-stated specific terms governing Good 'Til Cancelled listings ordered before Ebay's notice of a fee hike for such listings.

WHEREFORE, Plaintiff prays for the following relief:

a.     An order certifying the GUC Class as defined above, and appointing Plaintiff as GUC Class representative and Plaintiff's counsel as class counsel;

b.     A finding and declaration that Ebay, by increasing fees/rates on Good 'Til Cancelled listings purchased prior to July 19, 2006, breached its contract with Plaintiff and the GUC Class;

c.     An award of damages and interest thereon to Plaintiff and the other GUC Class members;

d.     Reasonable attorneys' fees and costs; and

e.     Such further and other relief as the Court deems appropriate.

## FIFTH CAUSE OF ACTION

### Breach of Covenant of Good Faith and Fair Dealing

### (Good Until Cancelled Class)

86.     Plaintiff realleges each of the preceding paragraphs as if fully set forth herein, and brings this cause of action individually and on behalf of the GUC Class.

87.     Ebay entered into a form, take-it-or-leave-it contract with Plaintiff and the GUC Class for the purchase of Good 'Til Cancelled listings.

88.     As part of the contract, Ebay owed Plaintiff and the GUC Class an implied duty of good faith and faith dealing.

89.     Pursuant to the contract, Plaintiff and the GUC Class made, reviewed and accepted the terms of the Good 'Til Cancelled listings only once – upon ordering the listing.  Thereafter,

19

1  pursuant to the contract, Ebay automatically debited monies from Plaintiff and the GUC Class

2  members for Good 'Til Cancelled listings on a recurring monthly basis (i.e., without their

3  monthly assent), unless the seller cancelled or sold all of the items in the listing.

4      90.    At the time Plaintiff and the GUC Class ordered Good 'Til Cancelled listings,

5  Ebay promised that the listing could be purchased by paying an Insertion Fee of $.02 / 30 days,

6  and above-described Final Value Fees upon sale, and that the listing would be automatically

7  extended every thirty days "until cancelled" by the seller or until all quantities in the listing were

8  sold.

9      91.    Ebay's stated contractual purpose of and opportunity offered by the Good 'Til

10  Cancelled listings was to purchase listings for "a longer duration and lower insertion fees," for a

11  "set price," that would be "good until cancelled" and that would be debited the low 2 cent

12  insertion fee every 30 days. Group Exhibit A.

13      92.    Ebay presented "Good 'Til Cancelled" listings as a long-range alternative to store

14  listings for 30, 60, or 90 day durations. *See*, *e.g.*, Group Exhibit A. The Good 'Til Cancelled

15  listings thus provided sellers with the bargain of cheaply listing large inventories of slow-selling

16  listings without having to manage the listing or "re-list," i.e., for a duration that was, by definition

17  and in comparison to the other store listing options, purposefully indefinite until sold (or

18  cancelled). *Id.* This was especially useful to sellers because on average store listings take far

19  longer than 30, 60, or 90 days to sell.

20      93.    However, on July 19, 2006, Ebay President Bill Cobb wiped out these very

21  benefits that pre-existing Good 'Til Cancelled listings had conferred. Mr. Cobb announced a

22  fee/rate increase for store inventory listings in general. But, Ebay applied the increase to pre-

23  ordered Good 'Til Cancelled listings—i.e., listings ordered even before July 19, 2006. Mr. Cobb

24  indicated that Ebay would increase store listing rates/fees because the "store" listing format –

25  which enabled sellers to list large inventories of items at lower (e.g., 2 cents/every 30 days) rates

26  than those charged for individualized "core" or non-"store" listings – has simply become more

27  popular than Ebay wanted.

28  ///

94.    Mr. Cobb brazenly indicated that the fee increase was intended to reduce the number of store inventory listings (including Good 'Til Cancelled listings), and to increase the number of more expensive core listings that required more maintenance.

95.    Ebay, by raising fees for pre-existing listings that Plaintiff and the GUC Class ordered prior to the notice of the fee increase, breached its duty of good faith and fair dealing to Plaintiff and the GUC Class.

96.    The fee increase frustrates the entire purpose of the Good 'Til Cancelled listings.

97.    The fee increase prevents Plaintiff and the GUC Class from receiving the benefits of the agreement (for the purchase of Good 'Til Cancelled listings), which provides that Plaintiff and the GUC Class may review and accept set fees for "Good 'Til Cancelled" listings that would recur every thirty days until cancelled or sold, at the terms stated above.

98.    Ebay's Good 'Til Cancelled promise and terms, its online User Agreement, and the common law, together do not authorize fee increases on Good 'Til Cancelled listings ordered prior to Ebay's July 19, 2006 notice, do not permit Ebay to institute an unreasonable or unconscionable rate increase, and any applicable ambiguity in the terms of Plaintiff's and other GUC Class members' Good 'Til Cancelled listings purchased prior to July 19, 2006, must be interpreted in their favor.

99.    Ebay's User Agreement promised that sellers "will have an opportunity to review and accept the fees that [sellers] will be charged based on our Fees schedule, which we may change from time to time."  Ebay's reliance on this generalized statement, to prevent Plaintiff and the GUC Class from receiving their pre-existing rates on listings ordered prior to July 19, 2006 that are "Good 'Til Cancelled," is bad faith.

100.    As a result, Plaintiff and the GUC Class were damaged Ebay is unjustly enriched.

101.    Ebay was unjustly enriched by its aforementioned conduct.  Ebay should account for all fees it improperly collected and withheld, and should have a constructive trust imposed, with respect to such monies it debited from sellers' financial accounts after August 22, 2006, in connection with Good 'Til Cancelled listings that were purchased before July 19, 2006.

21

1 WHEREFORE, Plaintiff prays for the following relief:

2 a. An order certifying the GUC Class as defined above, and appointing

3  Plaintiff as GUC Class representative and Plaintiff's counsel as class

4  counsel;

5 b. A finding and declaration that Ebay, by increasing fees/rates on Good 'Til

6  Cancelled listings purchased prior to July 19, 2006, breached its implied

7  covenant of good faith and fair dealing with Plaintiff and the GUC Class;

8 c. An award of restitution and/or damages and interest thereon to Plaintiff and the

9  other GUC Class members;

10 d. An order establishing a constructive trust consisting of all profits/revenues

11  that Ebay has improperly collected and received arising out of its fee

12  increase for pre-existing Good 'Til Cancelled listings;

13 e. Reasonable attorneys' fees and costs; and

14 f. Such further and other relief as the Court deems appropriate.

15

16 **DEMAND FOR JURY TRIAL**

17 Plaintiff demands a trial by jury on all matters so triable.

18

19 Respectfully submitted,

20 May 27, 2008 MARKUN ZUSMAN & COMPTON LLP

21

22 By: ___/s/Kevin K. Eng_____

23 Edward S. Zusman
 Kevin K. Eng

24 Attorneys for The Missing Link, Inc. d/b/a Bath

25 Plus, Inc., on behalf of itself all others similarly situated

26

27

28