1  Edward S. Zusman (SBN 154366)
   Kevin K. Eng (SBN 209036)
2  MARKUN ZUSMAN & COMPTON LLP
   465 California Street, Suite 500
3  San Francisco, CA 94104
   Telephone: (415) 438-4515
4  Facsimile: (415) 434-4505

5  Ilan Chorowsky (Admitted Pro Hac Vice)
   Chorowsky Law Offices
6  1130 N. Dearborn Street
   Suite 3110
7  Chicago, IL 60610
   Telephone: (312) 643-5893
8  Facsimile: (312) 643-5894

9  Frank Jablonski (Admitted Pro Hac Vice)
   Progressive Law Group LLC
10 354 W. Main Street
   Madison, WI 53703
11 Telephone: (608) 258-8511
   Facsimile: (608) 442-9494

12 Noah Shube (Admitted Pro Hac Vice)
13 The Law Offices of Noah Shube
   434 Broadway, Sixth Floor
14 New York, NY 10013
   Telephone: (212) 274-8638

15 Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE MISSING LINK, INC., d/b/a BATH PLUS INC., individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br>v.<br><br>EBAY, INC.,<br><br>             Defendant. | Case No. C 07 4487 RMW<br><br>**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:       July 18, 2008<br>Time:      9:00 a.m.<br>Courtroom: 6, 4th Floor<br>Judge:     Hon. Ronald M. Whyte |

///

///

///

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD FOR MOTIONS TO DISMISS.......................................................2

III. LEGAL ANALYSIS ...............................................................................................................3

    A. Plaintiff Has Adequately Pled The Breach Of Contract Claim................................3

        1. The First Amended Complaint Sets Forth the Relevant Contract Terms Applicable To Good 'Til Cancelled Listings ...............................................3

        2. eBay's Alleged Conduct Violated the Terms Of Its Contract With the GUC Class ..........................................................................................................5

    B. Plaintiff Has Adequately Pled Its Claim For Breach of the Implied Covenant Of Good Faith and Fair Dealing..................................................................................8

        1. The Implied Covenant Functions To Prevent Frustration Of the Goals Of the Contract, Even If There Is No Technical Breach ..................................8

        2. The Implied Covenant Prohibits eBay From Increasing the Rates On Existing Good 'Til Cancelled Listings.......................................................10

IV. CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Acree v. General Motors Acceptance Corp.*,
  92 Cal. App. 4th 385, 112 Cal. Rptr. 2d 99 (Cal. Ct. App. 2001)..........................................10

*Automatic Vending Co. v. Wisdom*,
  182 Cal. App. 2d 354, 6 Cal. Rptr. 31 (Cal. Ct. App. 1960)..................................................9

*Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 167 L. Ed. 2d 929
  (2007) .....................................................................................................................................2

*Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*,
  2 Cal. 4th 342, 6 Cal. Rptr. 2d 467 (Cal. 1992) ...............................................................9, 10

*Comunale v. Traders & General Ins. Co.*,
  116 Cal. App. 2d 198, 253 P.2d 495 (Cal. Ct. App. 1953) ...................................................8

*Doe v. United States*,
  58 F.3d 494 (9th Cir.1995)....................................................................................................2

*Erickson v. Pardus*,
  -- U.S. --, 127 S. Ct. 2197 (2007)..........................................................................................2

*Foley v. Interactive Data Corp.*,
  47 Cal. 3d 654, 254 Cal. Rptr. 211 (1988)..........................................................................10

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997).................................................................................................2

*Goddard v. South Bay Union High School Dist.*,
  79 Cal. App. 3d 98, 144 Cal. Rptr. 701 (Cal. Ct. App. 1978)...............................................8

*Hydrick v. Hunter*,
  500 F.3d 978 (9th Cir. 2006).................................................................................................2

*Kashmiri v. Regents of the University of California*,
  156 Cal. App. 4th 809, 67 Cal. Rptr. 3d 635 (Cal. Ct. App. 2007).............................6, 7, 8, 10

*Kendall v. Ernest Pestana, Inc.*,
  40 Cal. 3d 488, 220 Cal. Rptr. 818 (Cal. Ct. App. 1985).....................................................9

*Locke v. Warner Bros., Inc.*,
  57 Cal. App. 4th 354, 66 Cal. Rptr. 2d 921 (Cal. Ct. App. 1997).........................................9

*Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*,
  17 Cal. App. 4th 432, 21 Cal. Rptr. 2d 313 (Cal. Ct. App. 1993).........................................9

*Marks v. Chicoine*,
  No. C 06-06806 SI, 2007 WL 1056779 (N.D. Cal. Apr. 6, 2007).........................................2

*Marsu, B.V. v. Walt Disney Co.*,
   185 F.3d 932 (9th Cir. 1999)...........................................................................................................9

*Metzler v. Thye*,
   163 Cal. 95, 124 P. 721 (Cal. 1912).................................................................................................8

*Milmoe v. Gevity HR, Inc.*,
   No. C 06-04721 SBA, 2006 WL 2691393 (N.D. Cal. Sept. 20, 2006).........................................8

*National Ins. Underwriters v. Carter*,
   17 Cal. 3d 380, 131 Cal. Rptr. 42 (Cal. 1976) ...............................................................................8

*Parks School of Business, Inc. v. Symington*,
   51 F.3d 1480 (9th Cir. 1995)...........................................................................................................2

*Peloza v. Capistrano Unified School Dist.*,
   37 F.3d 517 (9th Cir. 1994).............................................................................................................2

*Perdue v. Crocker Nat'l Bank*,
   38 Cal. 3d 913 (Cal. 1985) ..............................................................................................................9

*Prouty v. Gores Tech. Group*,
   121 Cal. App. 4th 1225, 18 Cal. Rptr. 3d 178 (Cal. Ct. App. 2004)............................................8

*United States v. City of Redwood City*,
   640 F.2d 963 (9th Cir.1981)............................................................................................................2

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987)...........................................................................................................2

**STATUTES**

CAL. CIV. CODE § 1641 ............................................................................................................................7

CAL. CIV. CODE § 1644 ..........................................................................................................................10

CAL. CIV. CODE § 1650 ............................................................................................................................7

CAL. CIV. CODE § 1654 ............................................................................................................................8

CAL. CIV. CODE § 3534 ............................................................................................................................8

CAL. CIV. PROC. CODE § 1859.............................................................................................................7, 8

**RULES**

FED. R. CIV. P. 12(b)(6)............................................................................................................................2

## I. INTRODUCTION

This action arises from Defendant eBay, Inc.'s alleged unlawful and deceptive practices, which it implements through its online portal eBay.com. Plaintiff, The Missing Link, Inc. d/b/a Bath Plus Inc., sells bathroom fixtures directly to customers on eBay.com. Plaintiff alleges that eBay committed wrongful conduct in selling advertisements, or "listings," on its website to Plaintiff and other sellers.

First, Plaintiff asserts claims on behalf of the Listing Class, who purchased, *inter alia*, shorter, fixed-term listings (for example, 1, 3, 5, 7, or 10 day listings). Plaintiff alleges that, despite representations to the contrary, eBay made listings available for less than the contracted time period, and did not make listings "immediately" available to purchasers. eBay moved to dismiss the Listing Class claims in the original complaint. eBay's motion as to these claims was denied. (Order of May 5, 2008, Granting In Part and Denying In Part Motion To Dismiss ("Order"), 7-8, 9-12.)

Additionally, Plaintiff alleges unlawful conduct with respect to "Good 'Til Cancelled" ("GUC") listings, which eBay represented as being good for an indefinite duration – until cancelled by the seller, or until the item was sold. eBay further represented that Good 'Til Canceled listings would allow sellers to keep items listed for sale for a long period of time at a low price. To take advantage of the "Good 'Til Cancelled" listings and the commensurate lower prices, eBay first required sellers to establish virtual "stores" through eBay's website. After Plaintiff and other members of the GUC Class set up eBay.com "stores" and purchased GUC listings, eBay greatly increased the fee schedule for these listings. eBay then unilaterally and retroactively applied those increased fees to the preexisting GUC listings that Plaintiff purchased *before* eBay's notice of the fee increase.

Pursuant to the Court's Order, Plaintiff has amended the claims pertaining to the GUC Class. Plaintiff has identified the specific portions of eBay's web pages that set forth the terms of the Good 'Til Cancelled listings. As indicated in the First Amended Complaint ("FAC"), eBay represented that Good 'Til Cancelled listings were to be charged a fixed price that would last for the duration of the listing. This price was confirmed when a seller purchased the listing. Also

pursuant to the Order, Plaintiff has amended the complaint so that a claim for breach of the implied covenant of good faith and fair dealing is separately stated. As explained in detail below, the GUC claims are sufficiently pled, and the motion to dismiss should be denied in its entirety. Alternatively, should the Court grant any part of the motion to dismiss, Plaintiff contends that any shortcomings can be cured by amendment, and respectfully requests leave to amend its Complaint.

**II.   LEGAL STANDARD FOR MOTIONS TO DISMISS**

Dismissal for failure to state a claim under Rule 12(b)(6) is disfavored. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ; FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) dismissals are reserved for "extraordinary" cases. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981). On a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All reasonable inferences are to be drawn in the plaintiff's favor. *Marks v. Chicoine*, No. C 06-06806 SI, 2007 WL 1056779, *3 (N.D. Cal. Apr. 6, 2007) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)). General allegations must be assumed to embrace any specific facts needed to support them. *Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Rule 12(b)(6) motions do not question whether a plaintiff will ultimately be able to prevail on the merits – only whether the plaintiff is entitled to offer evidence to support the claims. *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2006). Thus, a complaint should not be dismissed if the factual allegations state a right to relief. *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, -- U.S. --, 127 S. Ct. 2197, 2200 (2007). Even in those cases where dismissal is granted, leave should be granted to amend the complaint. "[A] district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995) (citations omitted).

III.  **LEGAL ANALYSIS**

   A.  **Plaintiff Has Adequately Pled The Breach Of Contract Claim**

   1.  **The First Amended Complaint Sets Forth the Relevant Contract Terms Applicable To Good 'Til Cancelled Listings**

eBay imposes various contractual provisions on sellers who use eBay's online services. Despite the fact that eBay posts these provisions at several different parts of its web site, and revises them at its discretion, eBay binds all sellers to them through its User Agreement. Although the User Agreement itself has varied over time, it has consistently included this requirement. For example, the 2003 version of eBay's User Agreement provides, in pertinent part: "[Y]ou agree that you are subject to any posted policies or rules applicable to services you use through the Site, which may be posted from time to time. All such posted policies or rules are hereby incorporated by reference into this Agreement." (2003 User Agreement, ¶ 18.)[1]

Also, the 2006 User Agreement provides: "When using particular services on the Site, you are subject to any posted policies or rules applicable to services you use through the Site, which may be posted from time to time. All such policies or rules are hereby incorporated into this Agreement." (2006 User Agreement, *Additional Terms*.)[2] The 2007 version is substantially the same as the 2006 version. (2007 User Agreement, *Additional Terms*.)[3]

Among the rules and policies that eBay posted were those pertaining to its virtual "stores," which was the format for long-term, high volume listings through which Good 'Til Cancelled listings were offered. (FAC, ¶¶ 34-37.) eBay touted the lower prices available through these listings in inducing sellers to spend time and money to establish virtual "stores" through which the reduced "Good 'Til Cancelled" listings could be purchased. (FAC, ¶¶ 34, 37.) These policies were set forth separately from the User Agreement, which is silent as to eBay Stores or Good 'Til Cancelled listings.

---

[1] The 2003 User Agreement was previously submitted as Exhibit I to the Declaration of Heather Meservy ("Meservy Declaration") in connection with eBay's motion to dismiss the original complaint. (Doc. No. 13) The Court took judicial notice of this document in its Order Granting In Part and Denying In Part the motion to dismiss. (Doc. No. 41, at 5.)
[2] The 2006 User Agreement was previously submitted as Exhibit J to the Meservy Declaration, and also judicially noticed. (Doc. No. 41, at 5.)
[3] The 2007 User Agreement was previously submitted as Exhibit A to the Meservy Declaration, and also judicially noticed. (Doc. No. 41, at 5.)

3

On its separately posted "eBay Stores Fees" page, eBay sets forth the terms of its "Store Inventory format," which includes the Good 'Til Cancelled listing format:

> As an eBay Store owner, you'll have access to an additional listing format called Store Inventory format. Use this format to list your items at a set price, so buyers can purchase items immediately (no bidding). These listings have a longer duration and lower Insertion Fees but have limited visibility compared to the Online Auction and Fixed Price formats. If your item sells, you also pay a Final Value Fee.

(FAC, Exh. A.)

The "eBay Stores Fees" page also sets forth the fees that would be charged for this format. The fee for a standard Store Inventory listing was $.02 for a 30-day listing. This fee covered any quantity of items, "whether you list 1 or 1,000 of the same item." (FAC, Exh. A.) The same fee structure was applied to Good 'Til Cancelled listings, that is $.02 for 30 days, except that these listings would not end and the $.02 per listing fee would be automatically charged every 30 days. (FAC, Exh. A.) Further, like all Store Inventory listings, Good 'Til Cancelled Listings are subject to Final Value Fees, which are assessed when an item is sold. The original Final Value Fees were set at 8% for the initial sale price up to $25, plus additional percentage-based fees if the sale price was greater than $25 and $1,000. (FAC, Exh. A.)

To induce sellers to purchase Good 'Til Cancelled listings, eBay made representations that the specified fees would be good for the duration of the listing. eBay, for example, described its Good 'Til Cancelled listing as a "fixed price listing duration . . . ." (FAC, Exh. A) (eBay Stores FAQ). eBay further represented to its sellers that this "fixed price" option at $.02 cents per listing "allows you to list an item and have that listing automatically renew every 30 days as long as there is quantity available." (FAC, Exh. A.) Thus, while eBay contemplates that there will be a life-span to the listing itself (the time it takes for the seller to sell the established quantities for each listing), there is no indication that the agreed-to "fixed price" for the listing will also vary; to the contrary, it will be automatically renewed "every" thirty days until cancelled by the seller or sold.

eBay further reinforces the permanence of the Good 'Til Cancelled listings by stating that each "listing will recur each 30-day period until you choose to end this listing and will maintain

4

1  the same listing number for the entire life of the listing. eBay will not end this listing for you."
2  (FAC, Exh. A.) Given the permanence of the listing itself, in which the only change will be the
3  decrease in quantity, it is reasonable to construe the fixed price as being applicable to the life of
4  the listing. There is further affirmation that the fee is tied to the duration of the listing. eBay
5  assured its sellers that "[t]here are no additional fees for using the GTC duration option" other
6  than the Store Inventory listing fee, along with optional listing fees, which will be charged at 30-
7  day intervals. (FAC, Exh. A.) These representations demonstrate that the "fixed fee" and the
8  "GTC duration option" were intertwined components of the agreement between eBay and its
9  Good 'Til Cancelled sellers.

### 2. eBay's Alleged Conduct Violated the Terms Of Its Contract With the GUC Class

13  The members of the GUC Class had already contracted for lower rates by purchasing
14  GUC listings before eBay's rate increase. The lower rates were to remain in effect until the seller
15  cancelled the listing or all quantities of the item were sold. However, eBay retroactively changed
16  the terms of those agreements, increasing prices as much as 500 percent. (FAC, ¶¶ 39-41, 74,
17  75.) This conduct breached the provisions set forth above.
18  eBay renews its challenge to the breach of contract claim as to the GUC class, basing its
19  argument solely on the general provisions of its User Agreement and ignoring specific pages on
20  which eBay set forth the particular terms of Good 'Til Cancelled listings. In doing so, eBay also
21  disregards the specific allegations of the FAC, including its attached Exhibit A, which contain the
22  provisions discussed above. Instead, eBay claims that "[t]he FAC does not add any express terms
23  of the agreement that were allegedly breached and does not allege that eBay somehow failed to
24  comply with the contractual notice." (Mot. Dismiss FAC, 4:8-9.) eBay's argument should be
25  rejected for multiple reasons.
26  First, as discussed above, eBay chose to draft its User Agreement broadly to incorporate
27  by reference all policies that eBay chooses to post on its site. eBay's posted representations
28  concerning the Good 'Til Cancelled listings are therefore incorporated as part of the User

5

Agreement. eBay's attempt to seek dismissal now, based on a much more narrow view of the User Agreement, is unjustifiable. This attempt is all the more inappropriate considering that eBay advocated the consideration of numerous web pages, including a number of help screens (all of which were separate from the User Agreement) in its motion to dismiss the original complaint. (Order, 5:26-6:2.)

Second, eBay's proposition that the breach of contract claim should be evaluated based on an unduly narrow and restricted view of the User Agreement (and nothing else) would lead to an absurd result. The User Agreement itself makes no specific reference to eBay Stores, or Good 'Til Cancelled listings. The material terms governing the GUC class are necessarily set forth elsewhere, as is the case with most of eBay's policies regarding its services. By eBay's reasoning, however, it would not be bound to honor any of its representations set forth outside of the User Agreement. Thus, even though eBay made specific representations concerning Good 'Til Cancelled listings, including provisions stating that the purchases would remain in effect (at the agreed-upon rate and fee terms) until the seller cancelled them, or until all the items were sold, (FAC, ¶¶ 72, 74; Exh. A), it could arbitrarily delete a Good 'Til Cancelled listing with impunity because the User Agreement does not prohibit that conduct.

Moreover, to the extent that eBay is claiming that the general provision in its User Agreement takes precedence over specific terms as to Good 'Til Cancelled listings, that contention should be rejected. The same issue was recently addressed in *Kashmiri v. Regents of the University of California*, 156 Cal. App. 4th 809, 67 Cal. Rptr. 3d 635 (Cal. Ct. App. 2007). In *Kashmiri*, the challenged practice was the increase in a particular fee, a "professional degree fee," that was charged by various institutions in the University of California ("UC") system. *Id.* at 815. The fee was a recurring fee to be charged to certain degree programs, and once determined, was to remain the same for each student for the duration of his or her enrollment in the relevant degree program. *Id.* at 815-16. Notwithstanding its prior representations, the UC schools later increased the fee. *Id.* at 817. The UC relied on the fact that it had previously made numerous disclosures, on its website and in printed brochures and catalogues, stating that its fees were subject to change. *Id.* at 816-17.

In *Kashmiri*, the trial court had rejected the UC's claimed justification for increasing the relevant fee:

> With regard to the Regents' argument that it had warned students that fees could be changed and therefore the [fee] could be increased, the court found that the disclaimer was "irreconcilable" with its promises not to raise the [fee]. The court ruled that the more specific or exact term was more likely to express the intent of the parties. It therefore concluded that the more specific promise not to increase the [fee] for the duration of a student's enrollment was an exception to the general disclaimer that it may raise fees.

*Id.* at 820-21.

In affirming the trial court decision, the *Kashmiri* court relied on the rule of contracts that a specific provision overrides a general term. *Id.* at 833-34. This rule of contract interpretation is codified in California. First, section 1859 of the Code of Civil Procedure provides:

> [I]n the construction of the instrument the intention of the parties[] is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it.

CAL. CIV. PROC. CODE § 1859.

Also, section 1650 of the Civil Code provides: "Particular clauses of a contract are subordinate to its general intent." CAL. CIV. CODE § 1650.

The *Kashmiri* court was guided by these provisions, as well as the duty "to interpret the written provisions regarding fees together, 'so as to give effect to every part . . . .'" *Kashmiri*, 156 Cal. App. 4th at 834 (quoting CAL. CIV. CODE § 1641). That court concluded that "[u]nder the interpretation urged by the University, the specific promise not to raise the [fee] for continuing students would have no meaning." *Id.*

Further, the *Kashmiri* court noted that, with respect to the UC's numerous statements that fees could be increased:

> The University had complete control over what language to use in its catalogues and on its websites. It is well established that "[i]n cases of uncertainty not removed by [other] rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." . . . The University chose to declare that fees could change at any time at the same time it promised that one type of fee . . . would not be raised for continuing students. If the University intended to retain the right to raise the [fee] for continuing students, it should have so specified. Consequently, the University cannot now complain that a reasonable interpretation of the specific promise not to raise the [fee] for

///

7

> continuing students takes precedence over its general statement that fees can change without notice.

*Id.* (quoting CAL. CIV. CODE § 1654 and citing *Goddard v. South Bay Union High School Dist.*, 79 Cal. App. 3d 98, 105, 144 Cal. Rptr. 701 (Cal. Ct. App. 1978)) (first and second alterations in original).

The reasoning of *Kashmiri* applies with equal force here. Like the UC, eBay contends that the general provision in its User Agreement that it reserves the right to increase fees generally supersedes the specific representations concerning the Good 'Til Cancelled listings. The specific terms that eBay set forth state that Good 'Til Cancelled listings were fixed price listing durations, and the duration would last as long as there were quantities remaining to be sold, or the seller cancelled the listing. If eBay was correct, the specific terms governing the Good 'Til Cancelled listings would be meaningless. This position is unsustainable. *Id.* at 834. "[U]nder well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision." *Prouty v. Gores Tech. Group*, 121 Cal. App. 4th 1225, 1235, 18 Cal. Rptr. 3d 178 (Cal. Ct. App. 2004) (citing CAL. CIV. PROC. CODE § 1859; CAL. CIV. CODE § 3534; *National Ins. Underwriters v. Carter*, 17 Cal. 3d 380, 386, 131 Cal. Rptr. 42 (Cal. 1976); *Metzler v. Thye*, 163 Cal. 95, 99, 124 P. 721 (Cal. 1912); *Comunale v. Traders & General Ins. Co.*, 116 Cal. App. 2d 198, 201, 253 P.2d 495 (Cal. Ct. App. 1953)). Thus, the breach of contract claim is sufficient and the motion to dismiss this claim should be denied. *See Milmoe v. Gevity HR, Inc.*, No. C 06-04721 SBA, 2006 WL 2691393, *4 (N.D. Cal. Sept. 20, 2006) (citing *Prouty* in denying motion to dismiss breach of contract claim).

**B.    Plaintiff Has Adequately Pled Its Claim For Breach of the Implied Covenant Of Good Faith and Fair Dealing**

**1.    The Implied Covenant Functions To Prevent Frustration Of the Goals Of the Contract, Even If There Is No Technical Breach**

Plaintiff also sufficiently states a claim for breach of the implied covenant of good faith and fair dealing. "It is settled that in 'every contract there is an implied covenant that neither

8

1  party shall do anything which will have the effect of destroying or injuring the right of the other
2  party to receive the fruits of the contract . . . .'" *Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th
3  354, 363, 66 Cal. Rptr. 2d 921 (Cal. Ct. App. 1997) (quoting *Kendall v. Ernest Pestana, Inc.*, 40
4  Cal. 3d 488, 500, 220 Cal. Rptr. 818 (Cal. Ct. App. 1985)). "A 'breach of a specific provision of
5  the contract is not a necessary prerequisite' to a breach of an implied covenant of good faith and
6  fair dealing." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) (quoting *Carma
7  Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371, 6 Cal. Rptr. 2d 467 (Cal.
8  1992)). The implied covenant of good faith and fair dealing operates "'to prevent a contracting
9  party from engaging in conduct which (while not technically transgressing the express covenant)
10 frustrates the other party's rights of the benefits of the contract.'" *Id.* at 937-38 (quoting *Los
11 Angeles Equestrian Ctr., Inc. v. City of Los Angeles*, 17 Cal. App. 4th 432, 447, 21 Cal. Rptr. 2d
12 313 (Cal. Ct. App. 1993)). Notably, the implied covenant has been applied in a case such as this
13 one, where "a contract confers on one party a discretionary power affecting the rights of the other,
14 a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing."
15 *Automatic Vending Co. v. Wisdom*, 182 Cal. App. 2d 354, 358, 6 Cal. Rptr. 31 (Cal. Ct. App.
16 1960) (internal quotations omitted).[4]

17    As set forth above, eBay exercised its discretion by increasing fees on Plaintiff's existing
18 GUC listings by up to 500 percent. Such an increase quite clearly injures and in fact destroys
19 Plaintiff's ability to receive the benefits of pre-ordered GUC listings in the very manner that eBay
20 promised, as set forth in detail above. eBay further promised (as stated above) that the GUC
21 "listing will recur each 30-day period until you choose to end this listing and will maintain the
22 same listing number for the entire life of the listing. eBay will not end this listing for you."

---

[4] Plaintiff has challenged the manner in which eBay exercises its power, purported authorized by contract, because the terms are offered on a "take-it-or-leave it" basis. (FAC, ¶ 81.) The existence of unilateral power over a transaction and one-sided dealings, purportedly pursuant to a contract, brings the conscionability of the contract into question. *See Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 928-29 (Cal. 1985). Dismissal of conscionability claims at the pleadings stage has been disfavored. *See id.* at 928-29 (holding that case could not be dismissed at the pleading stage and that the parties were entitled to "a reasonable opportunity to present evidence as to the commercial setting, purpose, and effect of the [challenged practices] in order to determine whether the charge is unconscionable."). For this additional reason, eBay's motion to dismiss should be denied.

(FAC, ¶ 74; Exh. A.)  By applying its rate hike to pre-existing GUC listings, however, eBay effectively did "end" existing listings by forcing Plaintiff to cancel the GUC listing or absorb the much higher cost.  (FAC, ¶ 83.)  Indeed, contrary to eBay's promise at the time Plaintiff ordered its GUC listings, eBay increased GUC fees, including for existing listings, for the express purpose of reducing GUC listings.  (FAC, ¶¶ 93-94.)  Construing the allegations most favorably for Plaintiff, eBay's conduct thus prevented Plaintiff from receiving the benefits of eBay's promises and policies as to GUC listings ordered before the notice of the fee increase.  (*See*, *e.g.*, FAC, ¶¶ 90-92.)

### 2. The Implied Covenant Prohibits eBay From Increasing the Rates On Existing Good 'Til Cancelled Listings

The covenant of good faith and fair dealing is evaluated on a case-by-case basis.  *See Carma*, 2 Cal. 4th at 372-73.  The nature of the implied promise in any particular case will depend on the express terms of the contract and the legitimate expectations of the parties.  *Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385, 393, 112 Cal. Rptr. 2d 99 (Cal. Ct. App. 2001).  "To determine the reasonable expectation of the parties we examine 'the totality of the circumstances . . . .  Agreement may be "'shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances.'"  *Kashmiri*, 156 Cal. App. 4th at 832 (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 681, 254 Cal. Rptr. 211 (1988)).  Under these standards, the express terms concerning the Good 'Til Cancelled listings supports Plaintiff's Fifth Cause of Action.  As set forth above, the rates for each Good 'Til Cancelled listing was to be fixed for the duration of the listing.  Because no special or technical meaning was given to these terms, they should be read "in their ordinary and popular sense . . . ." *Id.* at 831 (citing CAL. CIV. CODE § 1644.)  There is no question that the duration of these listings was until cancelled (or until all quantities of an item are sold).  eBay's representation that a "fixed price" would apply for the duration of the listing created a reasonable expectation that the price would be determined at the time of purchase and would not be increased for the life of the listing.  Indeed, Plaintiff agreed to these terms at the time he ordered

10

the Good 'Til Cancelled listing, which eBay automatically renewed for the duration of the listing. (FAC, ¶ 89) ("Pursuant to the contract, Plaintiff and the GUC Class made, reviewed and accepted the terms of the Good 'Til Cancelled listings only once – upon ordering the listing."). Given that these terms were included with eBay's specific representations as to its Stores and Good 'Til Cancelled listings, it is also reasonable that the specific pricing terms would govern, not more general provisions set forth in the User Agreement. *See id.* at 833 ("Accordingly, we conclude that it was reasonable . . . to believe that the general statement that fees could be changed did not apply to the [fee], which according to the statements set forth by the [defendant], would remain the same . . . .").

## IV. CONCLUSION

As discussed above, Plaintiff has adequately pled its contract-based claims, both for breach of contract and for breach of the implied covenant of good faith and fair dealing. The material terms governing the Good 'Til Cancelled listings, which were dictated by eBay and touted in promoting sellers to use the Store format, provided that the prices for these listings were "set" and "fixed" and would be good for the duration of the listing. Whether analyzed in the context of express or implied contractual terms, eBay was prohibited from increasing the fixed prices on existing Good 'Til Cancelled listings. Therefore, eBay's motion to dismiss should be denied.

Respectfully submitted,

June 24, 2008

MARKUN ZUSMAN & COMPTON LLP
DAVID S. MARKUN (108067)
EDWARD S. ZUSMAN (154366)
KEVIN K. ENG (209036)

By:  /s/ Kevin K. Eng
KEVIN K. ENG

Attorneys for Plaintiff

11